JAMES RONEY, APPELLANT, v. BRUCE S. ALDRICH, RESPONDENT, IMPLEADED WITH CUYLER E. BALDWIN.

*Construction of division fences — duty of an owner to maintain and erect them — when he is liable for the injuries caused by their negligent construction.*

This action was brought by the plaintiff, who occupied, in 1883 and 1884, a farm owned by one Kelly, which adjoined, on the south, a farm owned, in 1884, by the defendant Aldrich, and which was then occupied by the defendant Baldwin, to recover damages for injuries sustained by the plaintiff's horses from being badly cut by a wire fence erected by the defendant Baldwin along the division line of the two farms. The portion of the fence at which the injury was sustained was erected upon that portion of the line which the defendant Aldrich was bound to erect and maintain, by Baldwin, under the authority of Aldrich, who furnished the wire for it, without giving any directions as to the size, kind or strength of the posts to be used, nor as to how far apart they should be set, nor as to how high above the ground the wires should be strung, nor how they were to be secured to the posts. The jury found that the fence was negligently and improperly constructed.

*Held,* that, as the defendant Baldwin in constructing the fence acted as either the servant or agent of Aldrich, the latter was liable for the damages sustained by the plaintiff.

APPEAL from an order granting a motion for a new trial made at Special Term after a verdict had been rendered in favor of the plaintiff at the Cortland Circuit.

In 1883 and in 1884, the plaintiff occupied a farm owned by one Kelley, which adjoined on the south a farm owned, in 1884, by Aldrich, and occupied, in 1884, by Baldwin. By an agreement between the proprietors, the owner of the Kelley farm was bound to build and maintain the part of the division fence west of a certain chestnut post; and the owner of the Aldrich farm was bound to build and maintain the part of the division fence east of said chestnut post. In 1883, the plaintiff, with the approval of

Kelley, built a galvanized barbed wire division fence from said chestnut post to the west end of the boundary line; and in June, 1884, a japanned barbed wire (Glidden's patent) fence was built from said chestnut post to the east end of the boundary line, by defendant Baldwin, under circumstances which will be more fully stated hereafter. While the plaintiff's horses were at pasture, they were, during the night of June 19, 1884, badly cut by a wire fence; and this action was brought to recover the damages. A verdict was rendered against both defendants for $133.50 damages. Upon a case containing all of the evidence, Aldrich alone moved for a new trial, which was granted as to him, with costs to abide the event. A judgment has not been entered. The plaintiff appeals from the order granting a new trial.

*Franklin Pierce*, for the appellant.

*T. E. Hancock*, for the respondent.

FOLLETT, J.:

The order not disclosing the grounds upon which it was granted, and no opinion having been written, the grounds of the decision must be searched for in the record. At the close of the evidence, Aldrich, alone, moved for a nonsuit because a cause of action had not been proved against him; which was denied, and an exception taken. At the close of the charge he excepted to the direction that a verdict might be rendered against him. We think the new trial was granted on these exceptions, for two reasons: First. No other exceptions were taken upon the trial, except to unimportant and not debatable rulings upon the reception and rejection of evidence; which rulings were all common to both defendants. Second. The payment of costs by Aldrich was not required, which is the usual condition imposed when a new trial is granted for an error of the jury in rendering a verdict contrary to the evidence. (*Bailey* v. *Park*, 5 Hun, 41; *Kelly* v. *Frazier*, 27 id., 314; S. C., 2 Civil Pro. R., 322.) The record not disclosing that the motion was granted for errors of the jury, this court will presume that the court below followed this rule of practice, and granted the motion upon the exceptions. (*Henderson* v. *Henderson*, 2 Abb., N. C., 102.) The verdict must be regarded as settling in plaintiff's favor

the three important questions of fact: First. That defendant's fence was negligently built. Second. That plaintiff's horses were injured thereby. Third. That plaintiff did not, by negligent acts, contribute to their injury. This brings us to the question of whether Aldrich is liable for the damages caused to the plaintiff by the negligent construction of this fence; otherwise stated, was the evidence insufficient, as a question of law, to render him liable; or was there sufficient evidence to make the question of liability one of fact for the jury?

Aldrich owned the farm, and as such owner was required by statute to build and maintain a just and equal proportion of the division fence. (1 R. S., 353, § 30, as amended in 1871 and 1872; 1 R. S. [7th ed.], 831.) He concedes that the owner of his farm was to build the part of the division fence extending east from the chestnut post (where the jury found the accident occurred), and it is proved that such had been the practice for many years. *Ditchett v. S. D. and P. M. Railroad Company* (67 N. Y., 425) does not hold that the occupant, and not the owner, is charged by the above statute with the duty of building and maintaining division fences as between adjoining owners. That case did not arise under this statute, or between adjoining owners, or between the occupants of adjoining properties; but it was an action by the administratrix of a traveler on a public street, who was killed by falling from the street into an excavation which had been previously guarded by a fence, but then out of repair. At common law, adjoining owners were not bound, as between each other, to maintain division fences unless the right to compel their maintenance had been acquired by prescription, or by agreement; and the cases which arose before the statute need not be considered.

The cases deciding whether a master is liable for the negligence of his servant, or a landlord for injuries sustained by third persons on leased premises, or whether the owner of land is liable for the negligence of a person who has contracted to do some act thereon, are instructive, but not directly in point, because none of these relations existed between Aldrich and Baldwin. So similar are many of the border duties of special agents and servants that it has been found impossible to draw a line clearly separating one from the other; and though this is a border case, we are of the

opinion that Baldwin must be held to have been the representative and agent of Aldrich in building the fence. Baldwin was not directed to use posts of any particular size, kind or strength; nor how far apart the posts should be set, nor how far apart, nor how high above the ground the wires should be strung, nor how they were to be secured to the posts. In these respects, which together, make up all there was to be done, he might, and did exercise his own judgment; and in these very respects the fence was negligently constructed. Aldrich is liable for this negligence of his agent. (Story's Agency, § 452, and cases there cited.) But if it be held that Baldwin was the servant of Aldrich, in building the fence, the rule of *respondeat superior*, under which principals are liable to third persons for the acts of their agents, and masters, to third persons (not co-servants), for the acts of their servants, fixes the liability of Aldrich for the negligent construction of the fence. That Baldwin represented Aldrich in the capacity of agent, or servant, cannot, we think, be doubted. Aldrich owned the farm; it was his duty to build the fence; he furnished the wire for it and authorized Baldwin to build it. We have said that the relation of landlord and tenant did not exist, which we think cannot be seriously doubted, for it does not appear that Baldwin had the sole right to occupy or control this farm, to the exclusion of Aldrich, for any period of time; and it affirmatively appears that rent was not paid, or agreed to be paid.

These views lead to a reversal of the order, with costs.

HARDIN, P. J., and BOARDMAN, J., concurred.

Order reversed, with costs, and judgment ordered upon the verdict.